Bay, J.
delivered the opinion of the Court.
I have considered this first ground, and have no hesitation in saying, that in my opinion the notice was sufficient of the non-payment by the drawer, to the endorser. Charleston being the place where the note was drawn and endorsed, shall be presumed to be the residence of both *369 for every mercantile purpose; and the use bf due diligence to find out either of them there, will answer the demands of the law upon this subject, it would be a monstrous and embarrassment to commerce, if the holder of a bill or a note was obliged to travel all over the world, to find out the drawer or endorse!*, In order to give' him notice of the'non-payment. 1 take it, therefore, to be a well established rule of mercantile law at this day, that the use of due diligence in the place or city where the bill is drawn, to find out either drawer or endorser, is all that is requisite. The cases cited from Chitty on Bills, 168 — 1 Johnson, 294 — and 2 New- York Term Rep. 129 — are full to this point. In the present instance, Mr. Reid, the notary, proved that, after the time for payment of the first note expired, he called at the house of Mr. Mision, the maker, where Mr. Morrall, the endorser, usually resided when in town, and inquired for both maker and endorser, of the wife of the maker, and demanded payment of the note, who refused payment, but informed the notary they were both out of town. Whereupon he, the notary, left a copy of the protest at Mr. Alistads house for Mr. Morrall, the endorser. This, in my opinion, is coming up not only to the rule laid down in the above cases, but is going a great deal further, and shows that every possible diligence was used which the nature of the case could admit of; and that rea *370 sonable notice was actually left for the endorsees' in the most proper train imaginable for its duly . reaching his hands.
With respect to the second ground, of giving day to the maker of the note, and taking a new security, I have no doubt, from the best view I can take of the subject, that it exonerated and discharged the endorser, as it had an evident tendency to put off to a distant and remote period the payment of the money he was so highly interested in seeing speedily discharged. It is scarcely to be presumed that any man would be so incautious and unwise as to endorse a note or bill unless he believed that the maker was able to take it up and pay the amount immediately, upon a failure of payment or acceptance; and unless he believed also that the holder would lose no time in his endeavours to recover without loss of time from the maker, in case of nonpayment. Any delay, therefore, on’the part of the holder, in his attempts to recover against the principal, is an injury done to the endorser as a collateral undertaker, and • lessens hi& chance of indemnity; for these reasons, the law enjoins great punctuality and diligence on the part of every holder of a bill or note. Hence it results, that every indulgence given by such holder, by giving further day, or taking a new .security, releases the endorser.
In our own Courts it has been determined so *371 early as the year 1791,(1 Bay, 176,) that giving new credit, or giving time to the maker, exonerates the endorser. This decision was bottomed upon the authority of Tindall vs. Brown — 1 Durnf. and East, 167 — where it was held, that if the holder gives time to the accepter oí a bill or drawer oí a note, after it has been dishonoured, the endor- . . ser is discharged. Late .authorities have confirmed this position. In 2 Henry Black. Reports, 163, it is said, where time is given, and security taken by the holder of a note, it discharges the endorser. And the question in this, and in every other similar case, is not, whether the endorser is benefited or not, but whether time is given, and a new security taken ór not ?
Where time is ‘or jSfdiScLr|™ XiiSSndthé terms on which it “ot'
This doctrine appears to have been confirmed by a great variety of authorities. Chitty on Bills, 619 ; 8 East's Rep. 576; 3 Bos. & Puller, 362; and 3 Esp. Rep. 46 and 49; and many other authorities.
The case under consideration is a remarkable one. Instead of taking a new bill for the speedy payment of the money, or any other' security likely to be fulfilled in a short period, which might in some cases have been some kind of excuse for a reasonable delay, twelve months are given for payment of part of the debt by the holder, and two years for the residue. This appears to me to be so much out of the line of all mercantile transactions, as totally to have *372 exonerated the endorser from all responsibility.
Charleston,
May, 1817.
Hayne, for the motion.
T. S. Grimke, contra.
I am therefore of opinion, that the verdict of the Jury should remain at rest, and that there should be no new trial.
The other Judges concurred.